IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JANET C. FLESHMAN and
ANTON TIBERIU,

                    Plaintiffs,                        No. 03:13-cv-02062-HZ

      v.

WELLS FARGO BANK, N.A., a                    OPINION & ORDER
national association,

                 Defendant.

David Richardson
PDX LAW GROUP, P.C.
621 S.W. Morrison Street, Suite 1200
Portland, Oregon 97205

        Attorney for Plaintiffs

Robert E. Sabido
Timothy J. Fransen
COSGRAVE VERGEER KESTER LLP
888 S.W. Fifth Avenue, Suite 500
Portland, Oregon 97204

        Attorneys for Defendant

1 - OPINION & ORDER

HERNANDEZ, District Judge:

Plaintiffs Janet Fleshman and Tiberiu Anton bring this mortgage-related action against Defendant Wells Fargo Bank.  Defendant moves to dismiss the action for failure to state a claim. I grant the motion because none of Plaintiffs' claims as currently pleaded in the First Amended Complaint state a claim.  I dismiss the negligence claim with prejudice because any amendment would be futile.  I dismiss the breach of contract claim and the Unlawful Trade Practices Act claims without prejudice because Plaintiffs may be able to re-plead those claims sufficiently to state a claim.

BACKGROUND

Plaintiffs allege that in 2010, they received a loan from Defendant to purchase residential property on Illinois Street in Portland.  First Am. Compl. at ¶ 6.  In 2012, they took out another loan from Defendant, this time to purchase rental property in Gresham.  Id.  In both loans, Plaintiffs executed promissory notes which were secured with trust deeds.  Id.

In late 2012 and early 2013, Plaintiffs began the process of refinancing the loan on their residential Illinois Street property in order to fund remodeling construction.  Id. at ¶ 7.  Although the loan eventually went through in late May 2013, Plaintiffs allege that during the application process, Defendant mailed them loan documents intended for another borrower, and that the other borrower received Plaintiffs' loan documents.  Id. at ¶ 9.  The documents contained sensitive personal information such as social security numbers, credit card account numbers, and bank account numbers.  Id.  Plaintiffs further allege that Defendant failed to complete the loan application process by the anticipated loan closing date of March 15, 2013, even though Defendant knew Plaintiffs had commenced construction on the residential Illinois Street

2 - OPINION & ORDER

property. Id. at ¶¶ 10-12. Plaintiffs were forced to work with several different employees of Defendant's during this time. Id. at ¶¶ 11-12. In the end, Defendant funded the loan on May 31, 2013. Id. at ¶ 13.

Plaintiffs allege that Defendant mistakenly applied the loan funds to their Gresham rental property instead of their residential Illinois Street property. Id. at ¶ 14. This triggered a past due notice for the payment on the Illinois Street property. Id. After extensive communications by Plaintiffs with various employees of Defendant's, the mortgage on the Gresham rental property was reinstated in late June 2013. Id. at ¶ 15. Plaintiffs spent additional time contacting Defendant to get certain late fee charges reversed. Id.

Plaintiffs contend that Defendant misdirected the Gresham rental property payments for July 2013, placing them in an escrow account. Id. at ¶ 16. They further allege that Defendant mailed Plaintiffs multiple past due notices and inaccurate account statements throughout June and July for both properties. Id. Finally, they contend that Defendant began calling Plaintiffs in July to inquire about their delinquent mortgages, which were in fact not delinquent. Id. Additional facts relevant to particular claims are discussed below.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Am. Family Ass'n, Inc. v. City & Cnty. of S.F., 277 F.3d 1114, 1120 (9th Cir. 2002). However, the court need not accept conclusory allegations as truthful. See Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory

3 - OPINION & ORDER

allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations") (internal quotation marks, citation, and alterations omitted).

A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" Id. (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Additionally, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. A complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct[.]" Id. at 679.

DISCUSSION

Plaintiffs bring three claims:  (1) breach of contract; (2) negligence; and (3) a claim under Oregon's Unlawful Trade Practices Act, Or. Rev. Stat. §§ (O.R.S.) 646.605–646.656 (UTPA). First Am. Compl. at ¶¶ 17-29.  I address them in turn.

/ / /

I.  Breach of Contract

In addition to the allegations above, Plaintiffs contend in support of their breach of contract claim that by entering into promissory notes and trust deeds for both properties, Plaintiffs and Defendant were in a "special relationship" where Defendant "and its subsidiaries were acting in part to further Plaintiffs' economic and beneficial interest of home ownership and/or pursuant to real property interests of Plaintiff's [sic] held in trust." Id. at ¶ 18.  As a result of this relationship, Plaintiffs contend that Defendant owed Plaintiffs heightened duties under "applicable laws and agreements," "including without limitation Oregon foreclosure and UTPA laws, MHA Treasury regulations, and the National Mortgage Settlement." Id.

Although somewhat confusing, based on additional allegations in the First Amended Complaint, I understand Plaintiffs to allege that the promissory note and trust deed agreements contain provisions for how payments will be applied, what fees and charges may be assessed, how the parties must communicate, and "each party's rights and remedies[,]" and that Defendant breached those provisions by (1) acting without proper authority or permission; (2) providing confidential information to a stranger; (3) failing to apply the loan refinance money to the residential Illinois Street property; (4) failing to credit payments to Plaintiffs' Gresham rental property; (5) assessing and collecting improper fees and charges; (6) providing inadequate servicing; and (7) reporting false, negative, and damaging credit information. Id. at ¶ 19. Plaintiffs also allege that the promissory note and trust deed agreements "incorporate[] applicable federal and state law and regulations." Id.

Based on these allegations, Plaintiffs allege that Defendant breached the promissory notes and trust deed agreements as well as the covenants of good faith and fair dealing implied in those

agreements.  Id. at ¶ 20.  Plaintiffs then allege that it was "foreseeable that Wells Fargo's breaches of contract and breaches of its duty to act in good faith and deal fairly would cause Plaintiffs damages."  Id. at ¶ 21.  At a minimum, Plaintiffs contend, Defendant's "conduct breached its duty of good faith and fair dealing to facilitate performance and enforcement of the promissory notes and Trust Deeds."  Id.  According to Plaintiffs "[t]hese actions include conduct stated in the previous paragraphs."  Id.

Plaintiffs then allege more specifically that as a result of Defendant's breaches, they suffered mental and emotional injury.  Id. at ¶ 22.  They also allege that the alleged breaches caused them economic damages, including "potential loss of Property, communication of private financial information to a stranger, negative and false credit reporting, and attempts to remedy Wells Fargo's actions, of at least $15,000.00."  Id.

Defendant moves to dismiss the breach of contract claim because it relies on an alleged special relationship which, Defendant argues, does not exist between a mortgage lender and borrower.  Defendant is correct that a plaintiff in a breach of contract action generally cannot recover tort or mental distress damages.  Richard v. Deutsche Bank Nat'l Trust Co., No. 03:09–cv–00123–SI, 2012 WL 1082602, at *9 (D. Or. Mar. 30, 2012) (citing Keltner v. Washington Cnty., 310 Or. 499, 510, 800 P.2d 752, 757-58 (1990)).  The exception to this rule is when the parties to the contract are in a "special relationship," meaning one where one party has authorized the other to exercise control and independent judgment on the former party's behalf and in the former party's best interests.  E.g., Bixby v. KBR, Inc., 893 F. Supp. 2d 1067, 1090 (D. Or. 2012) (""[P]arties to a contract are in a 'special relationship' imposing a heightened duty of care and thereby creating potential tort liability when one party delegates to the other the

authority to make important decisions with the understanding that the authority is to be exercised on behalf of and for the benefit of the authorizer.'") (quoting <u>Jones v. Emerald Pac. Homes, Inc.</u>, 188 Or. App. 471, 478, 71 P.3d 574 (2003)).

Defendant is also correct that the relationship between a lender and a borrower is an arm's length commercial relationship, not a special relationship under Oregon law. <u>Rapacki v. Chase Home Fin. LLC</u>, No. 03:11-cv-00185-HZ, 2012 WL 1340119, at *3 (D. Or. Apr. 17, 2012) ("Arms-length relationships between a bank and a customer or between a borrower and a creditor do not support a tortious breach of duty claim") (citing <u>Uptown Heights Assocs. Ltd. P'Ship v. Seafirst Corp .</u>, 320 Or. 638, 648–50, 891 P.2d 639, 645–46 (1995)). And, contrary to Plaintiffs' counsel's assertion at oral argument, nothing about the facts in this case makes the relationship anything other than an arms-length commercial relationship. Accordingly, I grant Defendant's motion to dismiss this claim to the extent the claim seeks mental or emotional distress or other tort-type damages from Defendant as a lender. Additionally, to the extent Plaintiffs seek these damages for a breach of the implied duty of good faith and fair dealing, they cannot. <u>Rapacki v. Chase Home Fin. LLC</u>, 797 F. Supp. 2d 1085, 1091 (D. Or. 2011) ("A claim asserting a breach of the implied covenant of good faith and fair dealing is a contract claim under which reputation, emotional distress, and punitive damages are unavailable").

In response to the motion, Plaintiffs assert that because Defendant was acting in its role as a loan servicer, not a lender, the cases finding no special relationship between a borrower and lender are distinguishable. Plaintiffs argue that the loan servicer-borrower relationship is a "special relationship" under applicable Oregon law. Putting aside that the First Amended Complaint fails to allege a special relationship based on Defendant's loan servicer status, I reject

Plaintiffs' argument because a loan servicer-borrower relationship is not a special relationship capable of allowing tort-type damages in the context of a contractual relationship.  See Smith v. Bank of Am. NA, No. 03:12–cv–01597–AA, 2013 WL 2659562, at *3 (D. Or. June 4, 2013) (noting lack of authority to support a special relationship between a borrower and a lender or loan servicer); see also Garner v. Bank of Am. Corp., No. 2:12-cv-02076-PMP-GWF, 2014 WL 1945142, at *7 (D. Nev. May 13, 2014) ("[a]bsent unique circumstances, lenders and loan servicers are not in a special relationship with borrowers"); Gipson v. JP Morgan Chase, No. 3:13-cv-2477-L, 2014 WL 947923, at *3 (N.D. Tex. Mar. 11, 2014) (no special relationship between a mortgage servicer and borrower that imposes an independent common law duty on the servicer).  And again, nothing about the facts of this particular relationship or Defendant's alleged conduct make this anything other than an arms-length business relationship.

Next, Plaintiffs argue that Defendant was subject to "several duties and standards of care not explicitly described in the loan agreements."  Pls.' Resp. at 5.  They contend that these duties arise both from the parties' special relationship[1] and independent obligations on Defendant.  Id.  They allege that each of these duties is actionable under the applicable loan agreements and under tort theory.  Id.[2]  As I understand Plaintiffs' contention, Plaintiffs contend that duties and standards of care from various sources, including the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617 (RESPA), the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 (GLBA), the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x (FCRA), and the "National Mortgage Settlement" (NMS) are "incorporated" into the parties' contracts and are "actionable" under

---

[1]  The prior discussion disposes of this "special relationship" argument.

[2]  I address the tort theory argument below in connection with Plaintiffs' negligence claim.

contract law.  Id. at 6.

In support of this argument, Plaintiffs cite to various portions of the relevant agreements for the proposition that the agreements "incorporated" "applicable law" into the contract terms. The documents do not support Plaintiffs' position.  First, Plaintiffs do not cite to the promissory notes in support of this argument so their contention does not apply to any alleged breach of those notes.

Second, the June 2011 Deed of Trust[3] for the residential Illinois Street property provides only that it is governed by federal law and the law of the jurisdiction in which the property is located, and in the event that any provision of the security instrument conflicts with "applicable law," such conflict does not affect other provisions of the instrument which can be given effect without the conflicting provision.  Ex. 2 to Pls.' Req. for Jud. Notice at ¶ 14.  In essence, this is a severability clause and nothing more.

The other two trust deeds are similar, but add a provision stating that "[a]ll rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law."  Ex. 3 to Pls.' Req. for Jud. Notice at ¶ 16 (Oct. 2, 2012 Deed of Trust on Gresham rental property); Ex. 4 to Pls.' Req. for Jud. Notice at ¶ 16 (May 29, 2013 Deed of Trust on residential Illinois Street property).  They continue:  "Applicable Law might explicitly or

---

[3]  Plaintiffs seek judicial notice of several documents, including the first Deed of Trust on the residential Illinois Street property, the Deed of Trust as to the Gresham rental property, and the May 2013 Deed of Trust issued as part of the refinanced loan on the residential Illinois Street property.  Pls.' Req. for Jud. Notice, Exs. 2, 3, 4.  Defendant makes no objection to Plaintiffs' request and I find the documents proper subjects for judicial notice in resolving the motion.  See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 989 (9th Cir. 2009) (court may consider judicially noticed documents on Rule 12(b)(6) motion); Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001) (judicial notice may be taken of public records).

implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract." Id. These trust deeds also contain a separate definition of "applicable law": "all controlling applicable federal, state and local statues, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Id. at p. 2, ¶ (J); Id. at p. 2, ¶ (I). The trust deeds do not "incorporate" the duties and obligations created by "applicable laws" into the actual contract terms.

More importantly, the facts in the First Amended Complaint upon which Plaintiffs base their claims do not show that they would be entitled to relief under the statutes. "RESPA requires the servicer of a federally related mortgage to provide a timely written response to inquiries from borrowers regarding the servicing of their loans." Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 665 (9th Cir. 2012) (citing 12 U.S.C. § 2605(e)(1)(A)), cert. denied, 133 S. Ct. 2800 (2013). If the servicer fails to respond properly to such a request, the statute entitles the borrower to recover actual damages. Id. (citing 12 U.S.C. § 2605(f)). The inquiry from the borrower must be a "qualified written request" under the statutory definition provided in 12 U.S.C. § 2605(e)(1)(B). No "magic language" is required; rather, the written correspondence must reasonably identify the borrower and the account, and must include a statement of reasons for the belief of the borrower that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. Id. at 666 (citing 12 U.S.C. § 2605(e)(1)(A)-(B)).

Importantly, the inquiry must request information related to servicing which RESPA defines to mean "receiving any scheduled periodic payments from a borrower pursuant to the

terms of any loan, including amounts of escrow accounts . . .  and making the payments of

principal and interest and such other payments with respect to the amounts received from the

borrower as may be required pursuant to the terms of the loan."  12 U.S.C. § 2605(i)(3).

Servicing "does not include the transactions and circumstances surrounding a loan's

origination[.]"  Medrano, 704 F.3d at 666-67.

 Here, RESPA provides no basis for Plaintiffs' challenge to conduct by Defendant as the

lender, including failing to close the refinance by the anticipated March 15, 2013 date, sending

the confidential loan application information to the wrong borrower, and disbursing the funds at

the origination of the refinanced loan in May 2013 to the wrong mortgage account.  RESPA does

not govern the alleged conduct of reporting damaging credit information.  Furthermore, it offers

no relief for the other alleged conduct of assessing and collecting improper fees and charges

because even assuming that this is conduct taken by Defendant as the loan servicer, and assuming

that Plaintiffs' correspondence to Defendant constitutes a "qualified written request" under

RESPA, Plaintiffs' own allegations show that Defendant timely responded to Plaintiffs' inquiries

and reversed the late fees.   First Am. Compl. at ¶ 15.  Finally, even if Defendant, as the loan

servicer, misdirected the July 2013 mortgage payment for the rental property as alleged in

Paragraph 16 of the First Amended Complaint, Plaintiffs' only alleged harm from that conduct is

"undue stress," not recoverable in a contract action absent a special relationship which does not

exist here.  First Am. Compl. at ¶ 16.

 FCRA was enacted to "to ensure fair and accurate credit reporting, promote efficiency in

the banking system, and protect consumer privacy."  Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47,

52 (2007).  It imposes responsibilities on "consumer reporting agencies" regarding assembling

and evaluating consumers' credit and disseminating information about consumers' credit.

Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009) (citing 15 U.S.C. §

1681(a)(4)).  In addition, to ensure that credit reports are accurate, FCRA imposes duties on the

furnishers of information, including the duty to provide accurate information to credit reporting

agencies (CRAs).  Id. at 1154; 15 U.S.C. § 1681s-2(a).  Furnishers also have duties which

commence "upon notice of dispute," meaning when a person who furnished information to a

CRA receives notice from the CRA that the consumer disputes the information.  Id.; 15 U.S.C. §

1681s-2(b).  The duties under subsection 1681-2(b) "arise only after the furnisher receives notice

of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger

furnishers' duties under subsection (b)."  Id.

Additionally, although "FCRA expressly creates a private right of action for willful or

negligent noncompliance with its requirements," subsection "1681s–2 limits this private right of

action to claims arising under subsection (b), the duties triggered upon notice of a dispute from a

CRA."  Id. (citing 15 U.S.C § 1681s–2(c)).  "Duties imposed on furnishers under subsection (a)

are enforceable only by federal or state agencies."  Id.

Here, Plaintiffs contend that Defendant breached a FCRA duty, allegedly incorporated

into the trust deeds, to provide accurate information to unnamed entities.  See First Am. Compl.

at ¶ 19 (alleging Defendant "reported false, negative and damaging credit information"); ¶ 22

(alleging Plaintiffs suffered damages including "negative and false credit reporting"); ¶ 24(i)

(alleging Defendant knowingly, willfully, or negligently reported false information "to the credit

bureaus").   There are no allegations which would allow Plaintiffs to bring a FCRA action under

subsection 1681s-2(b).  Accordingly, even if the "applicable law" were incorporated into the

contracts, the applicable law does not provide a cause of action because it expressly prohibits the consumer from directly suing the furnisher of allegedly false information when the allegation is based on duties imposed by subsection 1681s-(2)(a).  To allow Plaintiffs to "incorporate" into their trust deed a cause of action directly prohibited by Congress would completely undermine Congressional intent.

Next, the GLBA provides that "each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information[.]"  15 U.S.C. § 6801(a).  However, no private right of action exists for an alleged violation of the GLBA.  E.g., Wood v. Greenberry Fin. Servs., Inc., 907 F. Supp. 2d 1165, 1186 (D. Haw. 2012); see also Barnett v. First Premier Bank, 475 F. App'x 174 (9th Cir. July 26, 2012) (no private right of action under GLBA for alleged disclosure by bank of the plaintiff's financial information without a warrant, subpoena, or his consent).  Thus, again, even if the "applicable law" were incorporated into the terms of the relevant contracts, it would not allow Plaintiffs to sue Defendant directly for its actions in sending their personal information to another borrower.

Finally, Plaintiffs' reliance on the NMS is unavailing.  It is not a statute.  As described recently by another court, it is a "Consent Judgment between Wells Fargo, on the one hand, and the United States, forty-nine States, and the District of Columbia, on the other hand."  Weston v. Wells Fargo Bank, N.A., No. A-14-LA-51-SS, 2014 WL 811546, at *4 (W.D. Tex. Feb. 28, 2014) (citing Cause No. 1:12–cv–00361–RMC, Docs. 14 & 14–1 (D.D.C. Apr. 4, 2012)).  As noted by the Weston court, no private right of action was created by the Consent Judgment.  Id.  Additionally, "the Enforcement Terms of the Consent Judgment provide for enforcement only by

a party to the Consent Judgment or a monitoring committee." Id.  Because Plaintiffs here are

neither alleged to be parties to the Consent Judgment or a member of the monitoring committee,

they cannot rely on the NMS as a source of "applicable law" creating a right to sue Defendant for

breach of contract.

      In summary, Plaintiffs' breach of contract and implied duty of good faith claims are

dismissed.  First, they seek tort-type damages absent a special relationship.  Second, Plaintiffs'

attempt to "incorporate" contractual terms based on various statutes into their agreements with

Defendant is not supported by the language of those agreements which refer to "applicable law"

only as part of a severability clause or which indicate only that the rights and obligations in the

agreements are subject to the requirements and limitations of such law, but not that the laws

become terms in the contracts.  Third, even if the statutes were incorporated into the agreements,

each statute relied on by Plaintiffs either prohibits a direct claim against Defendant for violation

of those duties or Plaintiffs fail to allege facts bringing them within the statute's regulated

conduct.

      Furthermore, going forward, while I grant Plaintiffs leave to amend this claim, Plaintiffs

should clarify their contractual breach allegations to avoid another dismissal.  Given that there

are three separate deeds of trust between Plaintiffs and Defendant at issue, Plaintiffs must specify

which deed of trust(s)[4] Defendant allegedly violated and which provision(s) were violated by

---

      [4]  Although there are three deeds of trust discussed, I question whether any of the alleged
conduct committed by Defendant during the refinance application process can be challenged on
a breach of contract theory because there was no contract governing that conduct at that time.  The
existing deed of trust on the residential property would not govern Defendant's conduct in
processing a new loan.  The existing deed of trust on the rental property is not related to
Defendant's conduct in processing a loan on the residential property and had no relationship to
the residential property loan until Defendant allegedly misdirected the refinance loan to the rental

what specific conduct.  Plaintiffs must also specify the contractual harm that each alleged breach

caused.  It would also be prudent for Plaintiffs to either bring the duty of good faith and fair

dealing claim as an entirely separate breach of contract claim or to at least separate the

allegations in support of that theory of relief from the breach of the express contractual provision

allegations.[5]  While I recognize that only notice pleading is required in federal court, Plaintiffs

still need to plead their claims with sufficient particularity as to make them plausible.  Given that

Plaintiffs have now twice attempted to set forth their claims and still have not pleaded a plausible

claim for relief, much more specificity is required to state a plausible claim in this case.

II.  Negligence Claim

In support of their negligence claim, Plaintiffs contend that Defendant acted negligently

and caused Plaintiffs extreme emotional distress in nine specified ways.  First Am. Compl. at ¶

24.  They assert that Defendant's conduct was negligent "in relation to its contractual, statutory,

and other duties," and caused economic, non-economic, and emotional damage.  Id. at ¶ 25.

As noted above in connection with the contract claim, when the relationship between two

parties arises out of a contract, one party cannot bring a negligence claim against the other party

unless the other party is subject to a standard of care independent of the terms of the contract.

E.g., Georgetown Realty, Inc. v. Home Ins. Co., 313 Or. 97, 106, 831 P.2d 7, 12 (1992); see also

property in late May/early June 2013.  And until the refinance loan closed on May 31, 2013, there
was no third deed of trust governing the parties' relationship.

[5]  Plaintiffs should also note that their allegations of poor treatment do not necessarily
equate to a lack of good faith sufficient to support a claim based on the violation of the implied
duty of good faith and fair dealing.  See Stevens v. Foren, 154 Or. App. 52, 58, 959 P.2d 1008,
1011 (1998) (the implied duty of good faith and fair dealing "cannot contradict an express
contractual term, nor does it provide a remedy for an unpleasantly motivated act that is permitted
expressly by the contract") .

Medici v. JP Morgan Chase Bank, N.A., No. 03:11–cv–00959–HA, 2014 WL 199232, at *3 (D. Or. Jan. 15, 2014) (explaining that under Oregon law, one is not liable for negligently causing purely economic loss without injuring his person or property absent the ability of the plaintiff to show some sort of duty outside the common law of negligence); Baldin v. Wells Fargo Bank, N.A., No. 03:12–cv–00648–AC, 2013 WL 6388499, at *9 (D. Or. Dec. 6, 2013) (absent allegation of physical harm, recovery under a negligence theory for losses caused by a breach of contract requires the pleading of a special relationship or other heightened duty of care).

As explained above, no special relationship exists between Plaintiffs and Wells Fargo, either as lender or servicer.  In response to the motion, Plaintiffs argue that they bring a "statutory tort" claim based on the various statutes discussed above, or alternatively, if the statutes do not support a statutory tort, the statutes nonetheless provide a "heightened duty of care" supporting the negligence claim.

Plaintiffs' First Amended Complaint makes no mention of any statutory tort.  The First Amended Complaint refers to only one of the "statutes" Plaintiffs rely on in their response to the motion, and that reference is in the allegations supporting the breach of contract claim, not the negligence claim.  First Am. Compl. at ¶ 18 (alleging that Defendant and Plaintiffs were in a "special relationship," and that "[u]nder this relationship, [Defendant] owed Plaintiffs heightened duties under  . . . the [NMS]").

Aside from citing a four-part test under Oregon law to determine whether a "statutory tort" exists, Plaintiffs engage in no meaningful discussion of how applying that test results in a statutory tort for any of their cited statutes.  Pls.' Resp at 7.  To succeed in their argument, Plaintiffs need to establish, for each statute they rely on, that Defendant violated that particular

statute, that Plaintiffs were injured as a result of that violation, that Plaintiffs were members of the class of persons meant to be protected by the statute, and that Plaintiffs suffered an injury of a type that the statute was enacted to prevent.  See McAlpine v. Multnomah Cnty., 131 Or. App. 136, 144, 883 P.2d 869, 873 (1994).  Plaintiffs' failure to engage in the appropriate analysis is fatal to their argument.

Additionally, Plaintiffs' argument is more appropriately understood as asserting a "negligence *per se*" theory, not a "statutory tort" claim.  See Osborne v. City of Burns, No. 02:11–cv–00080–SU, 2012 WL 930815, at *12 n.9 (D. Or. Feb. 27, 2012) (noting that negligence *per se* is distinct from the concept of statutory tort; explaining that a "statutory tort claim asserts that a statute prescribes damages as a remedy for its violation" whereas a "negligence *per se* claim asserts that a statute establishes a standard of care, and it uses a violation of the statute to support a *prima facie* case for ordinary negligence"), adopted by J. Brown (D. Or. Mar. 19, 2012).  Because Plaintiffs rely on the cited statutes to provide a "heightened duty of care" to support their negligence claim, and because they seek damages beyond what are prescribed by the cited statutes, they appear to bring a negligence claim based on a negligence *per se* theory, not a statutory tort claim.

As properly characterized, Plaintiffs fail to discuss how any of the cited statutes provide for an independent, heightened duty of care from Defendant to Plaintiffs.  As previously explained, as relevant here, RESPA applies to conduct by the loan servicer, not the loan originator.  None of the specified allegations of negligence are directed at any loan servicing function other than perhaps the reporting of allegedly false information to "credit bureaus."  First Am. Compl. at ¶ 24.  And, as previously explained, RESPA does not address the provision of

information to credit bureaus and thus, cannot create a heightened duty of care regarding such conduct.

The NMS is not a statute and provides no independent duty of care. FCRA imposes a duty on the furnisher of credit information to provide accurate information to credit reporting agencies (CRAs). Id. GLBA imposes a duty on financial institutions to protect the security and confidentiality of its customers' nonpublic personal information.

However, that a statute creates a duty to act does not necessarily mean that it creates a heightened standard of care above the duty to avoid an unreasonable risk of foreseeable harm required to support a negligence claim. Scovill v. City of Astoria, 324 Or. 159, 173, 921 Pl.2d 1312, 1320 (1996) (statute at issue imposed a duty to act but did not create a standard of care and thus plaintiff could not bring a negligence per se claim based on the statute). For a statute to create a duty of care to support a negligence per se theory, it must fix the standard of care with certainty. As explained by the Oregon Supreme Court, when a party "invokes a governmental rule" in support of a negligence per se theory, "'the question is whether the rule, though it was not itself meant to create a civil claim, nevertheless so fixes the legal standard of conduct that there is no question of due care left for a factfinder to determine; in other words, that noncompliance with the rule is negligence as a matter of law.'" Gattman v. Favro, 306 Or. 11, 15 n.3, 757 P.2d 402, 404 n.3 (1988) (quoting Shahtout v. Emco Garbage Co., 298 Or. 598, 601, 695 P.2d 897 (1985)).

In a 2012 decision, Magistrate Judge Acosta concluded that FCRA did not supply a heightened duty of care to support a negligence claim. Decker v. GEMB Lending, Inc., No. 03:12-cv-00632-AC, 2012 WL 5304144, at *12 (D. Or. Sept. 13, 2012), adopted by J. Simon (D.

Or. Oct. 25, 2012).  Judge Acosta noted that while the statute addresses the alleged misconduct at issue, that alone "does not create an independent duty of care."  Id.  He remarked that there was no evidence of an intent by Congress to create a heightened duty of care.  Id.  Furthermore, he noted that there was no authority that a federal statute, rather than a state statute, "could provide the independent duty necessary to recover solely economic damages on a common-law negligence claim."  Id. (citing Johnson v. Wells Fargo Home Mortg., Inc., 635 F.3d 401, 420-21 (9th Cir. 2011) ("We have looked for Oregon cases premising the statutory duty exception to the economic loss doctrine on a federal, as opposed to a state, statute, and have found none, leaving us skeptical that Oregon law would cross jurisdictions for these purposes.")).

Assuming FCRA and GLBA both impose duties on Defendant, neither of them fixes a standard of care such that failure to comply with the duty establishes negligence as a matter of law.  Moreover, as Judge Acosta expressed, there is no authority for a federal, as opposed to a state, statute creating an independent standard of care for use in a negligence *per se* theory.

Finally, to determine whether a statute creates a duty to support a statutory tort claim or whether a statute enacts a standard of care to support a negligence claim based on a negligence *per se* theory, the court must discern the legislature's intent.  Scovill, 324 Or. at 166, 921 P.2d a 1316.  Plaintiffs must establish that the statute's authors intended that the breach of a duty gives rise to tort liability.  Medici, 2014 WL 199232, at *4.  Plaintiffs offer no such argument.

In summary, the negligence claim is dismissed because there is no special relationship and none of the statutes cited by Plaintiffs provide a heightened duty of care independent of the duty to avoid an unreasonable risk of foreseeable harm.  Moreover, this claim is dismissed with prejudice because amendment would be futile.

III.  UTPA Claim

Plaintiffs contend that Defendant violated the UTPA in nine separate ways:  (1) failing to deal with Plaintiffs in good faith; (2) soliciting but refusing to accept, retain, or properly apply payments from Plaintiffs; (3) refusing to communicate with Plaintiffs in a reasonable manner; (4) engaging in wrongful servicing actions; (5) assessing fees or charges not permitted under the terms of the subject notes or trust deeds; (6) refusing to acknowledge or correct Defendant's errors and mistakes; (7) causing confusion related to the parties' relationships, rights, and services; (8) violating applicable Oregon and federal laws as well as other requirements and agreements applicable to applications and servicing of Plaintiffs' loans; and (9) failing to properly or timely consider and evaluate Plaintiffs for refinance.  First Am. Compl. at ¶ 28.  Plaintiffs then allege that Defendant's conduct violated the UTPA and "proximately caused" Plaintiffs harm in a variety of ways.  Id. at ¶ 29.

The UTPA allows a private right of action for persons who have suffered an "ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608."  Actual damages or statutory damages of $200, whichever is greater, are allowed, as well as punitive damages and any other equitable relief the court considers necessary or proper.  O.R.S. 646.638(1).

O.R.S. 646.608 sets forth dozens of unlawful business and trade practices.  Defendant argues for dismissal of the UTPA claim because Plaintiffs fail to identify which of the dozens of regulated business and trade practices Defendant has allegedly violated and because Plaintiffs fail to allege facts establishing recoverable damages.  Defendant notes that Plaintiffs affirmatively

20 - OPINION & ORDER

allege that the misapplication of funds to the wrong mortgage account was corrected soon after it was discovered and that the late fees were reversed.

In response, Plaintiffs argue that "among other sections," they allege violations of O.R.S. 646.608(1)(a), (b), (e), (k), (s), and (u). Pls.' Resp. at 11. They argue that Defendant violated subsection (u) which provides that a person engages in an unlawful practice if in the course of business, the person "engages in any other unfair or deceptive conduct in trade or commerce," by failing to treat Plaintiffs in good faith, assessing or collecting charges when not authorized, and "misrepresenting information as stated above and in the Complaint." Pls.' Resp. at 11. They further argue that Defendant violated subsection (u) by violating applicable mortgage loan servicing rules under Oregon Administrative Rule (O.A.R.) § 137-020-0805 which lists several specific actions that are considered unfair or deceptive trade practices by mortgage loan servicers. Id.

Other than the explanation for the alleged violation of subsection (u), Plaintiffs reassert allegations made in the First Amended Complaint without tying them to a particular violation. For example, although Plaintiffs allege that Defendant violated O.R.S. 646.608(1)(a), (b), (e), (k), and (s), Plaintiffs repeat, in a bullet-point list, allegations such as "[r]efusing to communicate with plaintiffs in a reasonable manner," and "[r]efusing to acknowledge or correct defendant's errors and mistakes[.]" Id. But, Plaintiffs make no attempt to connect these allegations to a particular subsection of the statute.

None of the alleged subsections appear in the First Amended Complaint. And, while there are other problems with the pleading of this claim as noted below, a listing of the subsections in the response memorandum in bullet-point fashion does not allow Defendant to

21 - OPINION & ORDER

know how Plaintiff alleges Defendant violated each particular subsection. Thus, the claim must be dismissed.[6]

As to damages, Plaintiffs argue that they have sustained past and ongoing improper interest, late fees, and other charges assessed on all three loans. Pls.' Resp. at 12. They also allege that they suffered harm by false and damaging information reported to the credit bureaus by Defendant and have suffered other losses as a result of "time, postage, accounting, phone calls, and other costs to attempt to redress defendant's wrongs[.]" Id. They also state that they assert non-economic, statutory, and punitive damages. Id.

As noted above, the statute allows for actual or statutory damages of $200, whichever is greater. While it is unclear if "actual damages" includes emotional distress damages, Rathgeber v. James Hemenway, Inc., 335 Or. 404, 414, 69 P.3d 710, 717 (2003) (declining to address the issue of whether actual damages under the UTPA includes emotional distress damages)[7], it is clear that "a causal link between the plaintiff's loss and the defendant's actions must exist to state a viable UTPA claim." Fauley v. Washington Mut. Bank FA, No. 03:13-cv-00581-AC, 2014 WL 1217852, at *4 (D. Or. Mar. 21, 2014) (citing Paul v. Providence Health Sys.-Or., 237 Or. App. 584, 600–602, 240 P.3d 1110, 1121-22 (2010)).

---

[6] Moreover, as Defendant noted during oral argument, Plaintiffs' claim under subsection (u) is limited to conduct which the Oregon Attorney General has determined, via an Oregon Administrative Rule, to be an unlawful or deceptive trade practice. O.R.S. 646.608(4) (prohibiting claims under O.R.S. 646.608(1)(u) unless the Attorney General has first established a rule in accordance with Oregon Revised Statutes declaring the conduct to be unfair or deceptive in trade or commerce).

[7] Although the issue appears to remain undecided, it is worth noting that while the statute allows for recovery of actual damages, one must still suffer an "ascertainable loss of money or property" to even bring a UTPA claim. O.R.S. 646.638(1).

In <u>Fauley</u>, Judge Acosta dismissed the plaintiff's UTPA claim because while she alleged

losses, she failed to allege facts which put the defendant "on notice of the causal relationship

between the Defendants' unfair business practices and [the plaintiff's] ascertainable losses." <u>Id.</u> at

5.  Without elaboration, the plaintiff referred to her alleged losses only as having occurred as a

result of the previously alleged unfair business practices.  <u>Id.</u>  As Judge Acosta explained,

"[c]ausation is an essential element of  [a] UTPA claim under § 646.638, and [the plaintiff's]

failure to plead causation in sufficient detail denies her claim the requisite plausibility." <u>Id.</u>  The

same is true here.  Plaintiffs not only fail to offer facts sufficient to state a claim for the

subsections of O.R.S. 646.608 they argue Defendant violated, they also fail to plead causation in

sufficient detail to put Defendant on notice of the casual relationship between a particular alleged

unfair business practice and the ascertainable loss and damages incurred as a result of that

particular conduct.

Moreover, as Defendant notes, the UTPA applies only to real estate, goods, or services

"obtained primarily for personal, family or household purposes" and does not apply to rental

property.  O.R.S. 646.605(6)(a); <u>Sawyer v. ReconTrust Co., N.A.</u>, No. 03:11-cv-00292-ST, 2011

WL 2619517, at *6 (D. Or. May 27, 2011), adopted by J. Hernandez (D. Or. June 30, 2011).

Thus, despite Plaintiffs' assertion in its response that the UTPA claim relates to "all three loans,"

the claim cannot be based on the loan for the Gresham rental property.

Additionally, the statute requires that Defendant's alleged violation of the UTPA be

"willful."  O.R.S. 646.638(1) ("a person that suffers an ascertainable loss of money or property,

real or personal, as a result of another's persons <u>willful</u> use or employment of a method, act or

practice . . . .") (emphasis added); <u>see also</u> <u>Ruiz v. Hammer & Nails, LLC</u>, No.

23 - OPINION & ORDER

2:10–CV–1021–SU, 2013 WL 5436604, at *9 (D. Or. Aug. 13, 2013) ("To prevail on a claim

under [subsection 646.608(1)(e)], the plaintiff must prove that the defendant's representation was

willful") (citing <u>Rathgeber v. James Hemenway, Inc.</u>, 335 Or. 404, 410, 69 P.3d 710 (2003)),

adopted in relevant part by J. Mosman (D. Or. Sept. 27, 2013).  "A willful violation occurs when

the person committing the violation knew or should have known that the conduct of the person

was a violation." O.R.S. 646.605(10).  Plaintiffs fail to allege, in their UTPA claim, that

Defendant's conduct was willful.

Finally, the First Amended Complaint asserts a claim for attorney's fees for the alleged

UTPA violations.  First Am. Compl. at ¶ 29.  Such fees and litigation costs are incurred only as a

result of this litigation and are not the type that flow directly from unfair trade practices.  <u>Fauley</u>,

2014 WL 1217852, at *5 (holding that attorney, consultant, and expert witnesses fees were not

recoverable under the UTPA because they were incurred only as a result of litigation); <u>see</u> <u>also</u>

<u>Paul</u>, 237 Or. App. at 600-02, 240 P.3d at 1121-22) (explaining that expenses related to canceling

credit cards, running credit reports, changing social security numbers, as well as attorney's fees

were not ascertainable losses because they did not result directly from the alleged UTPA

violations but instead were losses incurred to prevent a <u>threatened</u> ascertainable loss).

Plaintiffs' UTPA claim fails for a number of reasons including that (1) the allegations in

the First Amended Complaint do not identify which subsections of O.R.S. 646.608(1) are alleged

to have been violated; (2) the allegations in the First Amended Complaint do not support the

violations identified in Plaintiffs' response to the motion; (3) Plaintiffs fail to sufficiently

articulate facts regarding the causation between the alleged particular violation and the particular

damage suffered; (4) Plaintiffs cannot state a UTPA claim for conduct related to the rental

property; (5) Plaintiffs fail to plead that Defendant's conduct was willful; and (6) some of the

alleged damages are unrecoverable in a UTPA claim.

CONCLUSION

Plaintiffs' request for judicial notice [18] is granted.  Defendant's motion to dismiss [14]

is granted.  Plaintiffs' negligence claim is dismissed with prejudice.  For the reasons explained in

this Opinion, amendment of this claim would be futile.  Plaintiffs' breach of express contract and

breach of the implied duty of good faith and fair dealing claims, as well as their UTPA claim, are

dismissed without prejudice.  Plaintiffs are given leave to amend these claims consistent with this

Opinion.  Any such amendment is to be filed within fourteen (14) days of this Opinion & Order.

IT IS SO ORDERED.

Dated this ____17____ day of ____June____, 2014

_____
Marco A. Hernandez
United States District Judge

25 - OPINION & ORDER