IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JANET C. FLESHMAN and TIBERIU
ANTON,                                              No. 03:13-cv-02062-HZ

        Plaintiffs,

    v.                                              OPINION & ORDER

WELLS FARGO BANK, N.A., a foreign
company,

        Defendant.

David Richardson
PDX LAW GROUP P.C.
621 S.W. Morrison Street, Ste. 1200
Portland, Oregon 97205

        Attorney for Plaintiff

Robert E. Sabido
Timothy J. Fransen
COSGRAVE VERGEER KESTER LLP
888 S.W. Fifth Avenue, Suite 500
Portland, Oregon 97204

        Attorneys for Defendant

1 - OPINION & ORDER

HERNANDEZ, District Judge:

Plaintiffs Janet Fleshman and Tiberiu Anton bring this mortgage-related action against Wells Fargo Bank.  Plaintiffs move for leave to file a Third Amended Complaint.  I grant the motion in part and deny it in part.

PROCEDURAL BACKGROUND

Plaintiffs filed this action on November 19, 2013.  Defendant was served in late January 2014.  Based on conferrals between counsel in an effort to avoid Defendant moving to dismiss the Complaint, Plaintiffs filed a First Amended Complaint on March 7, 2014.  Defendant moved to dismiss the First Amended Complaint in April 2014.  On June 17, 2014, I granted the motion, dismissing Plaintiffs' negligence claim with prejudice but allowing Plaintiffs to re-plead their breach of contract and unfair trade practices claims.  On July 1, 2014, Plaintiffs filed a Second Amended Complaint, re-pleading the two claims and adding a claim under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).  Defendant filed an Answer to that pleading on August 1, 2014.

Because it took over eight months to have pleadings in place, the case schedule set by the Court upon commencement of the action was moot.  A Rule 16 Conference was set for April 22, 2015.  At that time, Plaintiffs informed the Court they would seek leave to file a Third Amended Complaint.  I ordered that any motion for leave to amend be filed by May 1, 2015.  I set a further scheduling conference for May 15, 2015.  On May 1, 2015, Plaintiffs moved for an extension of time in which to file the motion to amend.  I granted a short extension, until May 6, 2015.  Plaintiffs filed the motion for leave to amend on that date.  At the May 15, 2015 scheduling conference, the following deadlines were established:  dispositive motions were due by July 1,

2015 with oral argument on any such motions set for September 1, 2015. A pretrial conference was set for November 30, 2015. Trial was set for December 8, 2015.

While the Court expected the parties to move their case along after the Answer was filed on August 1, 2014 and to engage in discovery, it is obvious there were problems. Plaintiffs did serve 118 requests for admission, 79 requests for production, and 19 interrogatories on Defendant in September 2014, but they were in violation of Federal Rule of Civil Procedure 26(d)(1) and Local Rule 26-1(4) because no Rule 26(f) discovery planning conference had occurred. The parties held that conference in November 2014 during which Plaintiffs agreed to reexamine and consider limiting their discovery requests before re-serving them. The parties also agreed to explore settlement. Plaintiffs agreed to informally provide Defendant with information supporting their alleged damages including a credit report.

Although it appears that Plaintiffs never re-served their discovery requests, on January 19, 2015 Plaintiffs sent Defendant a credit report to substantiate the credit reporting claim and damages. Plaintiffs' counsel states that he was unable to revise and limit the discovery requests without additional knowledge regarding the "root causes of the allegations." Richardson June 9, 2015 Decl. at ¶ 7. Plaintiffs' counsel reports that Plaintiffs were forced to conduct their own financial and activity audit for three separate loans in order to provide updated case and damages information to Defendant. Id. Additionally, Plaintiffs were experiencing increasing damages as a result of alleged ongoing problems. Id.

Plaintiffs also note that after they filed their Second Amended Complaint and before they sought leave to file a Third Amended Complaint, they attempted to work with Defendant directly, through third parties including the Oregon Attorney General's Office, and by

3 - OPINION & ORDER

participating in an Oregon Foreclosure Avoidance Program case initiated by Defendant. Defendant, however, withdrew that case in November 2014. And, while Plaintiffs did not inform the Court until late April 2015 that they were going to seek leave to amend, Plaintiffs' counsel told Defendant's counsel on February 4, 2015 that the Second Amended Complaint would need to be amended again. He set to work on those amendments.

Although the Court-imposed deadline to file the motion for leave was May 1, 2015, Plaintiffs waited until April 29, 2015 to forward a copy of the proposed pleading to Defendant and did not forward the more than 250 pages of exhibits until the next day, April 30, 2015, making it almost impossible for Defendant to assess whether it would consent to the filing of the Proposed Third Amended Complaint by the May 1, 2015 motion filing deadline. Thus, Plaintiffs' delay forced them to request an extension of time to file the motion to allow Defendant time to review the proposed pleading. As is now obvious, Defendant opposes the motion. Defendant served its first discovery requests on Plaintiffs on May 15, 2015. Richardson June 9, 2015 Decl. at ¶ 14.

STANDARDS

Under Federal Rule of Civil Procedure 15, if a party cannot amend as a matter of course under Rule 15(a)(1), "a party may amend its pleading only with the opposing party's written consent or with the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id. However, the court need not grant leave to amend where the amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006). Futility alone can justify denial of the motion. Gonzalez v. Planned

4 - OPINION & ORDER

Parenthood of L.A., 759 F.3d 1112, 1116 (9th Cir. 2014), cert. denied, 135 S. Ct. 1313 (2015).

Prejudice to the opposing party carries the "greatest weight" in determining whether to deny

leave to amend.  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

DISCUSSION

Plaintiffs' Proposed Third Amended Complaint expands the factual background

allegations from fourteen paragraphs to forty-four paragraphs, adds two new claims, adds a new

defendant, and adds many new facts in support of the individual claims.  Attach. 2 to Motion for

Leave to Amend.  Defendant opposes the motion based on undue delay, prejudice, and futility.

I.  Undue Delay & Prejudice

Defendant argues that contrary to Plaintiffs' contention in their motion, many of the newly

added factual allegations were not recently discovered because the alleged events occurred in late

2012 and early 2013, almost one year before Plaintiffs filed their original Complaint in

November 2013.  Defendant does not oppose amendment, on the basis of undue delay, of newly

asserted "post-filing facts," but it does oppose the addition of facts that were known or should

have been known to Plaintiffs before the commencement of the litigation.

Plaintiffs concede that some paragraphs in the proposed pleading contain facts that

predate the original Complaint.  But, they state that these facts were included in the prior

versions of the Complaint and others were added in response to Defendant's request for more

detailed information on damages.  Additionally, they assert that many of the facts were

discovered only during their "investigation" which appears to have been occurring from July

2014 through at least February 2015.

There is no dispute that this case is already old, having been filed approximately twenty

5 - OPINION & ORDER

months ago.  But, it is not clear which party is to blame for the fact that the case is stuck in the

pleading stage.  While Plaintiffs took some time to initially serve Defendant, Defendant then

successfully worked with Plaintiffs to avoid motion practice and Plaintiff filed a First Amended

Complaint.  Defendant requested an extension of time to respond to that pleading, then sought to

dismiss it.  Both parties received extensions of time for briefing the motion.  A decision was

issued in mid-June 2014 and Plaintiffs timely filed a Second Amended Complaint on July 1,

2014.  Defendant again requested an extension of time to respond to that pleading, eventually

filing an Answer on August 1, 2014.  Both parties bear responsibility for the fact that the

pleadings were not finalized until eight and one-half months after the case was filed.

Both parties also bear responsibility for the case stalling after that point.  Although

Plaintiffs' discovery requests were premature and perhaps not sufficiently limited in scope,

Plaintiffs did at least initiate discovery.  It is unclear why it took the parties two additional

months to have a Rule 26(f) discovery planning conference.  Given that the case was almost one

year old at that point, the parties should have put more effort into moving the case along.

Plaintiffs state they were pursuing non-litigation remedies.  But, that does not absolve them of

their responsibility to attend to litigation or of the expectation that discovery should have

commenced as soon as the discovery planning conference occurred.  They also state they were

attempting to gather additional information in order to pare down the discovery requests.  While

this may have been a worthwhile endeavor, at some point it should have been clear that they

needed to serve some initial discovery requests to get the case moving.  Plaintiffs also fail to

explain why it took from February 2015 when Plaintiffs' counsel states he told Defendant that

Plaintiffs would seek leave to amend the Second Amended Complaint, until early May 2015 to

actually file that motion.

Defendant, meanwhile, served no discovery requests of its own until May 15, 2015.  And, according to Plaintiffs, it withdrew from the foreclosure mediation process without meaningfully participating.

As these facts demonstrate, both parties have failed to sufficiently attend to the case. While Plaintiffs perhaps bear more of the blame, I cannot conclude that Plaintiffs' actions alone are why the case is almost two years old with the pleadings still in flux.

Moreover, some of the newly added allegations which pre-date the filing of the original Complaint or even the Second Amended Complaint, are expanded background facts which do not allege significant new conduct.  For example, Paragraph 7 in the Second Amended Complaint alleges that in January 2013 Plaintiffs applied to refinance their 2011 Loan in order to extensively remodel their Portland residence.  Sec. Am. Compl. at ¶ 7.  In the Proposed Third Amended Complaint, they embellish that allegation by detailing the home improvements that were part of the remodel.  Prop. Third Am. Compl. at ¶ 8.  In the Second Amended Complaint, they alleged that Defendant "seriously mishandled" the refinance application after providing an initial closing date of March 15, 2013.  Sec. Am. Compl. at ¶ 7.  In the proposed pleading, they add more detail by alleging that Defendant represented the application was deemed complete on January 15, 2013 and that the refinance would close on March 15, 2013.  Prop. Third Am. Compl. at ¶ 8.

Paragraph 10 in the Proposed Third Amended Complaint repeats an allegation in the Second Amended Complaint that while Defendant delayed processing the refinance allegation, Plaintiffs lived in their garage, stopped the renovations they had started, and lost business.  Prop.

Third Am. Compl. at ¶ 10; Sec. Am. Compl. at ¶ 7. Paragraph 10 of the proposed pleading does add facts from March and April 2013 that were obviously known to Plaintiffs before filing this action, but they do not significantly alter the gist of the allegation which is that Defendant unnecessarily delayed processing Plaintiffs' January 2013 refinance application and caused Plaintiffs harm. Prop. Third Am. Compl. at ¶ 10 (adding facts that on March 14, 2013, Plaintiffs notified Defendant that Plaintiff had to stop renovation work until the loan closed; that in April 2013, Plaintiffs suggested to Defendant that Defendant refund the appraisal fee and Plaintiffs would apply elsewhere; and that Defendant refused to refund that fee and told Plaintiffs their application was complete on April 17, 2013 but took no action on it until mid-May 2013).

Delay, by itself, will not support denying leave to amend. DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987). Given that the delays in this case are not solely attributable to Plaintiffs, and given that many of the newly-added allegations do not significantly alter the basis of the claims but instead provide additional factual detail about various transactions and communications, they are not prejudicial to Defendant. There is no basis for denying the motion because of undue delay.

In addition to undue delay, Defendant contends that it is prejudiced by this late motion in two ways. First, Defendant contends that Plaintiffs' premature service of excessive discovery requests before the Rule 26(f) planning conference, failure to provide information related to their alleged damages, and failure to re-serve more reasonably tailed discovery requests, allowed Plaintiffs to delay this litigation while increasing their alleged damages from $300,000 in the Second Amended Complaint to $5.8 million in the Proposed Third Amended Complaint. The fact that Plaintiffs have pleaded increased damages in their proposed pleading is not relevant to

the issue of whether they should be granted leave to amend, especially when Plaintiffs allege that

Defendant continues to engage in conduct causing them harm.  And contrary to Defendant's

position, Plaintiff's counsel states he did provide Defendant with a credit report in January 2015

to substantiate the credit reporting claim and damages.  Plaintiffs' counsel also states that

Plaintiffs were working on their own to obtain financial information because Defendant was

unwilling to investigate or provide information (1) in response to the Oregon Attorney General's

Office inquiries and (2) in the context of the Oregon Foreclosure Avoidance Program.

Defendant's argument is essentially a delay argument which I have already rejected.  I do not see

this as a "prejudice" argument sufficient to defeat a motion for leave to amend.

Second, Defendant argues that given the impending dispositive motion deadline,

Defendant will be hampered in its ability to evaluate a new pleading that is almost twice as long

as the operative pleading, is accompanied by 230 pages of exhibits, and seeks damages twenty-

times more than the operative pleading.  Defendant contends that it will be unable to assemble

the necessary evidence supporting a dispositive motion and to draft the motion by that deadline.

Because of the pending motion to amend and because of a July 7, 2015 judicial settlement

conference, in late June 2015 the parties moved to extend the case schedule.  I granted the motion

and extended the dispositive motion deadline to August 7, 2015.  While the deadline was

extended, it is still quickly approaching and I recognize the difficulty it presents for Defendant.

However, the nature of the prejudice is not an inability to file a dispositive motion or for

example, that the proposed amendments relate to evidence no longer existing, but only that

discovery and a dispositive motion cannot be prepared by August 7, 2015.

Prejudice may be found where additional claims are "raised at the eleventh hour, after

discovery [is] virtually complete and the [defendant's] motion for summary judgment [is] pending before the court." Roberts v. Ariz. Bd. of Regents, 661 F.2d 796, 798 (9th Cir. 1981). Prejudice may also be found if the parties need to reopen discovery or "have engaged in voluminous and protracted discovery." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994); see also Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999) (a need to reopen discovery is prejudicial).

      While the discovery and dispositive motion deadlines are only weeks away, they have not yet passed. This case is distinguishable from those where discovery has closed and dispositive motions are pending or resolved. Defendant does not argue that the proposed amendments take this case in a completely different direction. Although additional delay in getting the case to trial is unwelcome, I do not find that the delay alone is substantially prejudicial to Defendant as long as the case deadlines are extended.

## II. Futility

      Defendant raises several discrete futility arguments which I address separately.

### A. Addition of Fannie Mae as a Defendant

      The Proposed Third Amended Complaint adds Fannie Mae as a Defendant. Plaintiffs contend that Fannie Mae is a necessary party under Federal Rule of Civil Procedure 19 because Fannie Mae "is a party to the rental agreement note and trust deed and holds a real interest in the loan and the property." Pls.' Mem. at 5; see also Pls.' Reply at 8 ("As owner and beneficiary, Fannie Mae is a necessary party to adjudication of Plaintiffs' breach of good faith and fair dealing, and declaratory judgment claims.").

      Defendant argues that amendment to add Fannie Mae is futile because Fannie Mae was

not a party to either the Rental Loan promissory note or trust deed, and further because the

allegations relate to the refinance process and a payment dispute with Defendant, neither of

which involved Fannie Mae.

Under Rule 19(a)(1)(A), a person "whose joinder will not deprive the court of subject-

matter jurisdiction must be joined as a party if:  (A) in that person's absence, the court cannot

accord complete relief among existing parties[.]"  Fed. R. Civ. P. 19(a)(1)(A).  Under Rule

19(a)(1)(B), a person "whose joinder will not deprive the court of subject-matter jurisdiction

must be joined as a party" if

> (B) that person claims an interest relating to the subject of the action and is so
> situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the
> > interest; or
> > (ii) leave an existing party subject to a substantial risk of incurring double,
> > multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(B).

Under Rule 19(a)(1)(A), "complete relief" is concerned with "consummate rather than

partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the

same cause of action."  Alto v. Black, 738 F.3d 1111, 1126 (9th Cir. 2013) (internal quotation

marks omitted); see also Paiute–Shoshone Indians of the Bishop Cmty. of the Bishop Colony,

Cal. v. City of L.A., 637 F.3d 993, 997 (9th Cir. 2011) (under Rule 19, the court must examine

whether it can award "complete relief to the parties present without joining the non-party").

Plaintiffs argue that Fannie Mae is "a necessary party to provide complete and meaningful

relief among the existing parties and to prevent multiple lawsuits based upon the same facts,

circumstances, and causes of action."  Pls.' Mem. at 5.  But other than distinguishing two cases,

Plaintiffs offer little reasoning in support of this argument.  They state that their "relief would be hollow without fully adjudicating the rental loan note and trust deed issues involving Fannie Mae."  Id.  These conclusory assertions are unhelpful to the Court.

In Paragraph 4 of the proposed pleading, Plaintiffs allege that Fannie Mae "was at all relevant times the true beneficiary of the Rental Loan promissory note and deed of trust."  Prop. Third Am. Compl. at ¶ 4.  Two paragraphs later, however, they allege that the Rental Loan lender was Summit Mortgage Corporation.  Id. at ¶ 6.  They attach the promissory note and trust deed as Exhibits 2 and 3 to the proposed pleading.  Id.  Exhibit 2 is the promissory note for the Rental Loan which shows Summit Mortgage as the lender and Plaintiffs as borrowers.  Exhibit 3 confirms that Summit was the lender and that Plaintiffs were the borrowers.  It also shows the Trustee as "WFG National Title Insurance."  Further, Exhibit 3 names the Mortgage Electronic Registration System (MERS) as the beneficiary of the trust deed.  Nowhere do these documents mention Fannie Mae.  Plaintiffs' allegation that Fannie Mae "was at all relevant times" the beneficiary of the note and trust deed is not supported by the very exhibits Plaintiffs rely on in the proposed pleading.

Later, Plaintiffs allege that Fannie Mae is the current beneficiary of the Rental Loan trust deed and owner of the Rental Loan.  Prop. Third Am. Compl. at ¶ 68.  In response to an argument by Defendant, Plaintiffs submit additional exhibits with their reply in support of the motion for leave to amend.  Plaintiffs assert that the documents show that "both the Rental Loan and 2013 Refi are owned by Fannie Mae."  Richardson June 9, 2015 Decl. at ¶ 16 (citing Ex. 1). Exhibit 1 to Richardson's June 9, 2015 Declaration appears to show that as of June 9, 2015, Fannie Mae currently owns at least one of Plaintiffs' loans.  But, the documents fail to show

when Fannie Mae obtained its interest.  Thus, Exhibit 1 to Richardson's June 9, 2015 Declaration

offers no support for Plaintiffs' assertion that Fannie Mae "was at all relevant times" the

beneficiary of the promissory note and trust deed or was the owner of any of Plaintiffs' loans at

the time when the events forming the basis for their claims against Fannie Mae occurred.

Fannie Mae is named in two claims in the Proposed Third Amended Complaint.  In the

Fifth Claim for Relief, which Plaintiffs bring against both Defendant and Fannie Mae, Plaintiffs

allege, as noted above, that Fannie Mae is the current beneficiary of the Rental Loan trust deed

and owner of the Rental Loan.  Prop. Third Am. Compl. at ¶ 68.[1]  They contend that the terms of

the note and trust deed were breached by preventing Plaintiffs from performing the terms of

those agreements by (1) using the funds from the 2013 refinance loan to mistakenly pay off the

Rental Loan; (2) requesting an additional $6,166.56 escrow payment; (3) performing illegal

escrow calculations; (4) altering Rental Loan payment amounts; (5) assessing or collecting fees

or costs on the Rental Loan; (6) failing to refund surplus escrow balance; (7) placing Plaintiffs'

payments into a suspense account; (8) providing Plaintiffs with conflicting and misleading

communications and accountings; (9) initiating and continuing collections; (10) initiating the

foreclosure mediation case; (11) designing systems that prevent agents from investigating or

correcting borrower complaints or accounting errors; (12) refusing to investigate borrower

complaints or account errors; and (13) reporting adverse credit information.  Id. at ¶ 70.

---

[1]  The other claim naming Fannie Mae as a defendant is the Seventh Claim for Relief
which seeks a Declaratory Judgment against both Defendant and Fannie Mae.  Prop. Third Am.
Compl. at ¶¶ 77-78.  Because I conclude that Fannie Mae is not a necessary party on the Fifth
Claim, there is no reason to consider whether Fannie Mae is such a party as to the Seventh Claim
which, as discussed below, seeks declarations regarding conduct that does not involve Fannie
Mae.  As also discussed below, I find the Seventh Claim legally deficient.

Plaintiffs also contend that the above conduct breaches the implied covenant of good faith and fair dealing.  Id. at ¶ 71.  This covenant was further breached according to Plaintiffs, by breaching applicable "HAMP, National Mortgage Settlement, and Fannie Mae servicing requirements," as well as by "providing contradictory and misleading information to the Oregon Attorney General and others; and refusing to work with borrowers individually, their attorney, housing counselor, AG representative, mediation case manager, and credit reporting bureaus." Id.  Plaintiffs allege that these breaches have damaged them and prevented them from performing as intended under the Rental Loan.  Id. at ¶ 72.  They state that their economic damages will be determined at trial, but they assert that those damages will be a minimum of $800,000.  Id.

I agree with Defendant that the exhibits Plaintiffs submit with their proposed pleading and in support of the motion to amend fail to show that Fannie Mae was a party to the promissory note or trust deed "at all relevant times" as Plaintiffs allege.  And, while Fannie Mae may be the present owner of at least one of Plaintiffs' loans, the proposed pleading and the exhibits do not establish when Fannie Mae became the owner.  Moreover, as is clear from reading the entirety of the Proposed Third Amended Complaint, the alleged conduct was not committed by Fannie Mae. E.g., Prop. Third Am. Compl. at ¶¶ 9 ("Wells Fargo seriously mishandled this refinance application"); 12 ("Wells Fargo finally disbursed the 2013 Refi funds intended for the Residence renovation . . . [but] the Bank bungled the payoff and misapplied the funds to the Rental Loan instead")[2]; 19 ("Wells Fargo . . . entered an 'escrow shortage' and 'escrow advance" of $6,166.56"); 21 ("the Bank requested another $6,166.56"); 22-25 (alleging accounting and

---

[2] Plaintiffs identify Defendant Wells Fargo Bank, N.A. as either "Wells Fargo" or "the Bank."  Prop. Third Am. Compl. at ¶ 3.

escrow errors by "the Bank"); 31 (allegations regarding Wells Fargo's reports to credit reporting agencies).

Because Fannie Mae was not a party to the promissory note or trust deed at all relevant times and because no conduct of Fannie Mae's is alleged in support of the breach of contract claim in which Fannie Mae is a named defendant, Fannie Mae is not a required party under Rule 19(a)(1)(A). Because only Wells Fargo's conduct is implicated by the allegations, there is no reason that Plaintiff cannot obtain complete and meaningful relief from Wells Fargo. As Defendant notes, none of the allegations concern ownership of the loan, enforceability of the contracts, or possession of the property. The allegations address actions taken only by Wells Fargo.

This same result occurs even when the motion is examined under Rule 19(a)(1)(B). Assuming that Fannie Mae claims an interest in the subject of the action making Rule 19(a)(1)(B) applicable, the preceding discussion makes clear that disposing of the action in Fannie Mae's absence does not impair or impede Fannie Mae's ability to protect its ownership interest because none of the allegations attack that interest. For the same reason, Plaintiffs are not left at substantial risk of incurring multiple inconsistent obligations because of Fannie Mae's alleged ownership interest.

Finally, Plaintiffs suggest that because Wells Fargo, as the loan servicer, was Fannie Mae's agent, Fannie Mae is a vicariously liable for Defendant's servicing conduct and Fannie Mae will indemnify Defendant concerning "these causes of action." Pls.' Mem. at 5. Putting aside the fact that the proposed pleading has no express allegations regarding vicarious liability or indemnification, that Fannie Mae may be an indemnitor does not make it a required party

15 - OPINION & ORDER

under Rule 19(a)(a).  See EEOC v. Peabody W. Coal Co., 610 F.3d 1070, 1087 (9th Cir. 2010) (suggesting that Rule 19 is not intended for potential indemnitors) (citing and quoting Pasco Int'l (London) Ltd. v. Stenograph Corp., 637 F.2d 496 (2d Cir. 1980) ("potential indemnitors have never been considered indispensable parties, or even parties whose joinder is required if feasible")); Cronin v. Adam A. Weschler & Son, Inc. 904 F. Supp. 2d 37, 41 (D.D.C. 2012) (potential right to contribution or indemnity from a non-party does not make the non-party a required party under Rule 19).

Because Fannie Mae is not a required party under Rule 19(a)(1), it would be futile to allow Plaintiffs to amend the Second Amended Complaint to add Fannie Mae as a Defendant. Moreover, in contrast to the prejudice Defendant would suffer by a short but sufficient extension of case deadlines, the addition of Fannie Mae would cause much more significant delay.  Time would have to be allowed for service of process upon Fannie Mae, Fannie Mae's response, and discovery.  Such a delay would substantially prejudice Defendant.  I deny the motion to amend to the extent Plaintiffs seek to add Fannie Mae as a Defendant.

B.  UTPA Claims - Third Claim for Relief

In the Third Claim for Relief, Plaintiffs allege that Defendant violated Oregon's Unlawful Trade and Business Practices Act (UTPA) in various ways.  The UTPA claim itself is not new, but Plaintiffs bring claims under previously unasserted subsections of the statute.

1.  Oregon Revised Statute § (O.R.S.) 646.608(1)(e)

Plaintiffs allege that Defendant willfully violated O.R.S. 646.608(1)(e) by (1) misrepresenting the characteristics and status of the loans including assessing and collecting improper mortgage insurance, late fee, and other charges related to the misapplication of the

16 - OPINION & ORDER

2013 refinance loan funds; (2) "attempting to obtain the 2013 Refi funds returned to Plaintiffs illegally through the Rental Loan"; (3) inaccurately accounting for the 2011 loan payoff and 2013 refinance loan after returning part of the 2013 refinance principal to Plaintiffs; and (4) misrepresenting the status and approval of the refinance application from early January 2013 through May 23, 2013, knowing that Plaintiffs commenced their renovation based upon those misrepresentations.  Prop. Third Am. Compl. at ¶¶ 59A, B.

This statutory subsection makes it an unlawful business or trade practice for a person to "[r]epresent[] that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have[.]"  O.R.S. 646.608(1)(e).  Defendant argues that this subsection is inapplicable because Plaintiffs do not allege that they received a loan different from the loan that was offered to them. Instead, they allege that Defendant made errors in applying payments and other monies to the loans at issue.  Thus, Defendant argues, the claim is legally deficient and futile.

Plaintiff argues that a claim under this subsection is sufficient if it asserts that the defendant knew or should have known that a representation about real estate, goods, services, etc. was not true.  In support, Plaintiffs cites to a 2014 opinion by Judge Simon.  Bromfield v. HSBC Bank Nev., No. 03:13-cv-00462-SI, 2014 WL 183895, at *6 (D. Or. Jan. 13, 2014).  The case does not help Plaintiffs, however, because the issue there was only whether the plaintiff alleged facts that plausibly suggested that the defendant knew or should have known that its representations about its credit card terms were untrue.  Here, the issue is whether communications about the application of loan payments and escrow funds to the loans at issue are "representations" about the "characteristics" of the loan.  Neither party provides any law or

meaningful discussion on this issue.  As a result, I cannot determine whether the claim is futile.

This is better resolved at summary judgment.[3]

### 2.  O.R.S. 646.608(1)(k)

Plaintiffs allege that Defendant violated this subsection of the UTPA by making false or

misleading representations including: (1) that the 2013 refinance principal amounts sought by

Defendant were escrow shortages under the Rental Loan; (2) that Wells Fargo could obtain the

2013 refinance principal amounts by altering the Rental Loan provisions regarding escrow,

payments amounts, and late fees; (3) that the 2011 Loan was fully paid off by the 2013 refinance

funds; and (4) "about the amounts accounted for under the 2013 Refi after refunding part of the

principal to Plaintiffs through the Rental Loan."  Prop. Third Am. Compl. at ¶ 60.

This subsection makes it an unlawful trade or business practice for a person to "[m]ake

false or misleading representations concerning credit availability or the nature of the transaction

or obligated incurred."  O.R.S. 646.608(1)(k).  Defendant argues that this claim fails to state a

claim because the statute applies only to representations regarding "credit availability" or the

"nature of the transaction or obligation incurred."  Defendant argues that here, the loan servicing

misconduct alleged by Plaintiffs does not involve credit availability or "transaction/obligation

terms."

Plaintiffs argue that misrepresentations as to the amount of a borrower's arrearage,

payment amount, escrow amounts or adjustments, and refusal to provide an accurate accounting

constitute violations of the statute.  In <u>Moore v. Wells Fargo Bank, N.A.</u>, No. 03:13-cv-00170-

---

[3]  Moreover, I note that this claim was pleaded in the Second Amended Complaint, albeit with fewer facts, and Defendant chose to Answer that pleading, implying that Defendant found it sufficient to state a claim.

PA, 2013 WL 3965313, at *5 (D. Or. Aug. 1, 2013), the plaintiffs alleged that the defendant failed to provide them with a proper accounting of the default amount on their mortgage, and misrepresented the amount to be much larger than what plaintiffs believed possible. Judge Panner concluded that such conduct could state a claim under the "nature of the transaction or obligation" portion of subsection 646.608(1)(k). Id. While I agree with Defendant that the alleged conduct is not representations concerning "credit availability," it appears to involve representations about the nature of the loans. As such, the claim is not futile.

### 3. O.R.S. 646.608(1)(q)

Plaintiffs allege that Defendant violated this subsection by misrepresenting the status and approval of the refinance process from January to May 2013, knowing that Plaintiffs began their renovation based on a March 15, 2013 closing date. Prop. Third Am. Compl. at ¶ 61. This subsection makes it an unlawful business or trade practice to "[p]romise[] to deliver real estate, goods or services within a certain period of time with intent not to deliver the real estate, goods or services as promised." O.R.S. 646.608(1)(q). Defendant argues that the claim fails to state a claim because Plaintiffs do not allege that Defendant made any promise, much less any promise to deliver within a certain period of time and with the intent not to deliver what was promised.

Plaintiffs argue that their allegations are sufficient. They point to Paragraph 8 of the proposed pleading which alleges that Defendant represented that the application was deemed complete on January 15, 2013 and that the refinance would close by March 15, 2013. Prop. Third Am. Compl. at ¶ 8. They also cite to their allegations that Defendant made repeated requests for documents it had, represented that the application was complete only to request further information, and failed to forward the application to appropriate departments for review.

Id. at ¶ 61.  Plaintiffs argue that the allegations in Paragraph 61 establish that Defendant did not intend to review and close the loan by the March 15, 2013 date.

The allegations are capable of suggesting negligent or intentional conduct by Defendant. While Plaintiffs are not express in asserting that Defendant made a "promise" or that Defendant made a promise without the intention of keeping that promise, Plaintiffs' assertion that Defendant "misrepresented" the closing date along with the assertion that Defendant's violation of this subsection was willful are capable of implying that Defendant made a promise it intended not to keep.  This sufficiently states a claim under this subsection.

C.  Fifth Claim for Relief

As indicated above in the discussion regarding the addition of Fannie Mae as a Defendant, this claim is brought against Defendant and Fannie Mae and challenges conduct concerning the Rental Loan note and trust deed.  Prop. Third Am. Compl. at ¶¶ 67-72.  In addition to alleging a breach of contract, Plaintiffs raise an implied covenant of good faith and fair dealing claim based on (1) alleged breaches of "HAMP, National Mortgage Settlement, and Fannie Mae servicing requirements"; (2) the alleged provision of contradictory and misleading information to the Oregon Attorney General and "others"; (3) and the alleged refusal to work with the borrowers individually, their attorney, housing counselor, "AG representative," mediation case manager, and credit reporting bureaus.  Prop. Third Am. Compl. at ¶ 71.[4]

Defendant argues that these allegations fail to state a claim.  Defendant points to this

---

[4] As currently pleaded, it is possible to read the claim as alleging a breach of the covenant of good faith and fair dealing by Fannie Mae only.  Prop. Third Am. Compl. at ¶ 71 ("Fannie Mae or its agents breached this covenant by: . . . .").  However, given the reference to "agents," I understand Plaintiffs to include Defendant in this claim.

Court's June 17, 2014 Opinion and Order dismissing the First Amended Complaint where I

rejected an argument that terms of the "National Mortgage Settlement" (NMS) were not

enforceable through a breach of contract claim.  June 17, 2014 Op. & Ord. at 13-14 (explaining

that the NMS was not a statute but a consent judgment between Wells Fargo and forty-nine states

with no private right of action and with enforcement expressly limited to a party to the consent

judgment or a monitoring committee and thus rejecting Plaintiffs' argument that the NMS was a

source of "applicable law" creating a right to sue for contractual breaches).  Although I did not

previously address a reliance on the Home Affordable Modification Program (HAMP) as a

source of contractual terms or duties in this case, Defendant notes that other Judges in this Court

have concluded that HAMP guidelines are not enforceable by a private right of action.  E.g., Vida

v. Onewest Bank, F.S.B., No. 03:10-cv-00987-AC, 2010 WL 5148473, at *4-6 (D. Or. Dec. 13,

2010).

    In my June 17, 2014 Opinion, I dismissed Plaintiffs' breach of contract and implied duty

of good faith and fair dealing claims because

> [f]irst, they seek tort-type damages absent a special relationship. Second,
> Plaintiffs' attempt to "incorporate" contractual terms based on various statutes into
> their agreements with Defendant is not supported by the language of those
> agreements which refer to "applicable law" only as part of a severability clause or
> which indicate only that the rights and obligations in the agreements are subject to
> the requirements and limitations of such law, but not that the laws become terms
> in the contracts. Third, even if the statutes were incorporated into the agreements,
> each statute relied on by Plaintiffs either prohibits a direct claim against
> Defendant for violation of those duties or Plaintiffs fail to allege facts bringing
> them within the statute's regulated conduct.

June 17, 2014 Op. & Ord. at 14.  As part of the discussion leading to my conclusions, I noted that

several of the statutes Plaintiffs alleged to be incorporated into the relevant loan documents or

alleged to set standards of conduct for Defendant, did not allow Plaintiffs to bring a claim

directly under that statute and that to allow Plaintiffs "'to incorporate' into their trust deed a cause

of action directly prohibited by Congress would completely undermine Congressional intent." Id.

at 13.

In response to Defendant's argument here, Plaintiffs cite to three cases which Plaintiffs

suggest hold contrary to the conclusion I reached in the June 17, 2014 Opinion.  Plaintiffs argue

that even if the federal law creates no private right of action, it can still support a state law claim.

The three cases Plaintiffs rely on are distinguishable.  And, without controlling law directly on

point, I do not alter the conclusion made in the June 17, 2014 Opinion.

Two of the three cases concerned whether a federal law lacking a private right of action

preempted a state law claim relying on that federal law.  Wigod v. Wells Fargo Bank, N.A., 673

F.3d 547, 581 (7th Cir. 2012); Patrick v. Citimortgage, Inc. (In re Patrick), No. 13-61661, 2014

WL 7338929, at *8 (Bankr. N.D. Ohio Dec. 22, 2014).  While holding that a federal law without

a private right of action does not preempt a state law claim which relies on that law, neither of

these two cases expressly addressed the question of whether such federal laws can be

incorporated into a contract, the alleged violation of which supports a breach of contract claim.

The third case did not involve a breach of contract claim and therefore is not particularly

instructive.  Mik v. Fed. Home Loan Mortg. Corp., 743 F.3d 149 (6th Cir. 2014).

Moreover, even if the cases stand for the proposition that the statutes at issue provide

standards which can be incorporated into contracts, Plaintiffs still fail to show that the

agreements here actually incorporate these provisions as contractual terms.  As my prior

examination of the documents shows, the agreements refer to "applicable law" only as part of a

severability clause or only as an indication that the rights and obligations in the agreements are subject to the requirements and limitations of such laws, not that the laws are terms in the contracts.  June 17, 2014 Op. & Ord. at 8-10, 14.

As to the alleged breach of the Fannie Mae servicing requirements supporting the breach of contract/implied duty of good faith claim, Plaintiffs fail to allege what those requirements are or how they were violated.  Plaintiffs fail to allege how they became part of the Rental Loan (the only loan at issue in this claim) promissory note or trust deed.  Similarly, Plaintiffs' assertions regarding an alleged breach of contract or breach of the implied covenant of good faith and fair dealing caused by Defendant's alleged provision of misleading information to others and alleged refusal to work with various third parties, do not state a claim.  Plaintiffs fail to cite to contractual language governing such conduct.  Absent such language, there is no contractual breach.  And while the law implies a duty of good faith into every contract, the parameters of that duty are guided by the objectively reasonable contractual expectations of the parties which are grounded in the express provisions of the contract.  Best v. U.S. Nat'l Bank of Or., 303 Or. 557, 563, 739 P.2d 554, 558 (1987) (contractual good faith doctrine is designed to "effectuate the reasonable contractual expectations of the parties"); Klamath Off-Project Water Users, Inc. v. Pacificorp, 237 Or. App. 434, 445, 240 P.3d 94, 101 (2010) (common law implied duty of good faith and fair dealing serves to effectuate the objectively reasonable expectations of the parties); see also Or. Univ. Sys. v. Or. Pub. Emp. Un, 185 Or. App. 506, 515-16, 60 P.3d 567, 572 (2002) (the duty "does not operate in a vacuum[;]" rather it "focuses on the agreed common purpose and the justified expectations of the parties, both of which are intimately related to the parties' manifestation of their purposes and expectations in the express provisions of the contract").

23 - OPINION & ORDER

Thus, the implied duty of good faith claim is analyzed in the context of the parties' expectations as embodied in the express agreement and is not based on standards of conduct foreign to the contract.

I agree with Defendant that the allegations in Paragraph 71 of the Proposed Third Amended Complaint attempt to bring a claim which would be futile.  Therefore, I deny the motion to amend to the extent the proposed pleading includes Paragraph 71.

D.  Declaratory Judgment - Seventh Claim for Relief

In their Seventh Claim for Relief, Plaintiffs seek a "declaration of the past and present interest, rights and obligations of all parties in relation to each of the subject notes and trust deeds."  Prop. Third Am. Compl. at ¶ 78.  They then state that without limiting "this request," they "also" request eleven specific declarations.  Id. at ¶ 78A-K.  These include declarations such as "[t]hat Wells Fargo illegally logged and requested $6,166.56 for the Rental Loan escrow account"; "[t]hat Wells Fargo improperly changed Plaintiffs' Rental Loan payment amount on one or more instances"; "[t]hat Wells Fargo improperly retained Plaintiffs' Rental Loan payments in a suspense fund"; and "[t]hat all adverse credit reporting on the Rental Loan was illegal or improper and should be corrected, as current[.]" Id. at ¶ 78A, D, E, H.

Defendant argues that the proposed claim does not seek a declaration of Plaintiffs' rights or of the legal relations of the parties.  Instead, the claim requests only that the Court declare that Defendant did what it allegedly did as described in the proposed pleading, or that certain conduct was generically illegal.  As such, Defendant characterizes the claim as seeking an advisory opinion on what facts occurred during the events at issue in the case.  Because advisory opinions are barred by the United States Constitution, Defendant argues that the claim fails to state a claim

and therefore, is futile.  McQuillon v. Schwarzenegger, 369 F.3d 1091, 1095 (9th Cir. 2004).

Plaintiffs argue that they seek declaratory judgment of certain "facts and occurrences" to assist them in repairing and rebuilding their credit in the future.  They note that they continue to be damaged by adverse credit reporting and ongoing accounting mistakes.  The declaratory relief requested, they suggest, would allow them to correct their credit reporting directly with the credit reporting bureaus "in case Defendant's credit corrections do not occur or are not processed."  Pls.' Reply at 12.

Under the Declaratory Judgment Act, the court can "declare the rights and other legal relations of any interested party seeking such declaration[.]"  28 U.S.C. § 2201(a).  As Plaintiffs themselves note, "[d]eclaratory relief operates prospectively to declare future rights, rather than to redress past wrongs."  Edejer v. DHI Mortgage Co., No. C 09-1302 PJH, 2009 WL 1684714, at *11 (N.D. Cal. June 12, 2009) (internal quotation marks omitted).  As the Edejer court further stated,

> [w]here there is an accrued cause of action for a past breach of contract or other wrong, declaratory relief is inappropriate. The purpose of a declaratory judgment is to set controversies at rest before they cause harm to the plaintiff, not to remedy harms that have already occurred.  If a party has a fully matured cause of action for money, the party must seek damages rather than declaratory relief.

Id. (citations and internal quotation marks omitted).

Here, the requested declarations in the Seventh Claim for Relief do not seek to declare future rights or legal relations of the parties.  Instead, Plaintiffs seek validation of the facts supporting their claims for damages.  Plaintiffs' claims are fully accrued because the conduct supporting the alleged breaches of the various contracts, the alleged RESPA violation, the alleged UTPA violations, and the alleged erroneous credit reporting alleged in the FRCA claim,

25 - OPINION & ORDER

has already occurred.  Plaintiffs have "fully matured causes of action for money" and thus, they seek damages.  Because they seek a declaration about the legality of Defendant's past conduct, the entry of a declaratory judgment is no more than a declaration that Plaintiffs were wronged in the manner alleged.

Moreover, the one requested declaration that perhaps could be viewed as declaring a future right or legal relation is that Plaintiffs are current on the Rental Loan.  Prop. Third Am. Compl. at ¶ 78G.  But, the status of Plaintiffs' Rental Loan is bound up with all of the allegations addressed to Defendant's handling of that loan, including the handling of the escrow monies, the alteration of the payment amounts, the assessment and collection of fees, and the placement of Plaintiffs' payments into a suspense account.  Thus, the requested declaration is essentially just another declaration about past acts.

Because the declaratory judgment claim is legally deficient, it is futile and Plaintiffs' motion to amend is denied to the extent it seeks to add this claim.

E.  Narrative, Argumentative, & Frivolous Allegations

Finally, Defendant argues that certain specific allegations are either narrative, argumentative, or frivolous and are subject to a motion to strike under Rule 12(f).  Therefore, Defendant argues, they are futile and should be disallowed.  Defendant objects to twelve separate paragraphs.  My review of these paragraphs indicates that while Plaintiffs plead several irrelevant facts[5] as well as argumentative allegations in some of the challenged paragraphs, this is not a

---

[5] E.g., Prop. Third Am. Compl. at ¶ 24 (asserting that Defendant "refused to address the issues at hand" after Plaintiffs filed this action and instead sought to dismiss the Complaint); Id. at ¶ 40 (asserting that Plaintiffs are using their "reduced income" to fund this litigation); Id. at ¶ 43 (asserting that Plaintiffs were unable to "joyfully" plan their wedding).

basis for striking in this case.

The court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter. Fed. R. Civ. P. 12(f). Granting a motion to strike is within the discretion of the district court. See Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 975 (9th Cir. 2010) (motion to strike under Rule 12(f) reviewed for abuse of discretion); Rapid Funding Group, Inc. v. Keybank Nat'l Ass'n, No. 07-1348-PK, 2009 WL 2878545, at *2 (D. Or. Sept. 2, 2009) (disposition of a motion to strike is within the discretion of the district court). "[S]triking a party's pleadings is an extreme measure[.]" Stanbury Law Firm v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000). Rule 12(f) motions to strike are viewed with disfavor and are infrequently granted. Legal Aid Servs. of Or. v. Legal Servs. Corp., 561 F. Supp. 2d 1187, 1189 (D. Or. 2008), aff'd, 608 F.3d 1084 (9th Cir. 2010).

Even if I assume that the paragraphs Defendant objects to fall within the purview of Rule 12(f) and are subject to being stricken, I would exercise my discretion in favor of not striking them. The objections are to particular allegations and not to an entire claim or a newly added party. They do not change the nature or the basis of the claims. Thus, while they may be immaterial or argumentative, they do not alter the litigation in any significant way. As a result, I allow them.

/ / /

/ / /

/ / /

/ / /

/ / /

27 - OPINION & ORDER

CONCLUSION

Plaintiffs' motion to amend [38] is granted in part and denied in part.  Plaintiffs shall file a Third Amended Complaint conforming to this Opinion within ten (10) days of the date of this Opinion.  No further amendments are allowed.  The Courtroom Deputy is directed to promptly set a telephone scheduling conference to adjust the case schedule.  The current dates for the close of discovery, dispositive motions, pretrial conference, pretrial filings, and trial, are stricken.

IT IS SO ORDERED.

Dated this _23_ day of _July_ , 2015

Marco A. Hernandez
United States District Judge

28 - OPINION & ORDER